# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

RA'SHALL STEEDE,                )
                                )
            Plaintiff,          )
                                )
                                )
v.                              )               No. 11-2351-STA-dkv
                                )
GENERAL MOTORS, LLC,            )
                                )
            Defendant.          )

---

## ORDER AFFIRMING THE MAGISTRATE JUDGE'S ORDER GRANTING IN PART, DENYING IN PART THE MOTION TO COMPEL

---

Before the Court is Plaintiff Ra'Shall Steede's Sealed Objections (D.E. # 76) to the Magistrate Judge's Order on Plaintiff's motion to compel filed on November 15, 2012. The United States Magistrate Judge entered an order granting in part and denying in part Plaintiff's motion to compel (D.E. # 73) on November 2, 2012. Defendant General Motors, LLC ("GM") has filed a response in opposition to Plaintiff's objections (D.E. # 78), and Plaintiff has filed a reply brief (D.E. # 86). For the reasons set forth below, the Magistrate Judge's Order is **AFFIRMED**.

## BACKGROUND

### I.  Procedural History

The Magistrate Judge included the following background summary in her order, and neither party has objected to her recitations of the facts. This is a personal injury and products liability action in which Plaintiff seeks both compensatory and punitive damages for injuries she suffered, including but not limited to damages for pain and suffering, past and future lost wages,

property damage, and past and future medical expenses. (Pl.'s Am. Compl. ¶ 61, D.E. # 18.) Plaintiff filed her initial complaint on April 1, 2011 in the Circuit Court of Shelby County, Tennessee. (Pl.'s Compl., D.E. # 1.) On May 5, 2011, GM removed the action to the United States District Court for the Western District of Tennessee. (Def.'s Notice Rem., D.E. # 1.)

This action arises out of a April 4, 2010 car accident in which Plaintiff was a passenger in a 2002 Chevrolet S-10 Blazer designed, engineered, manufactured, and marketed by GM. (Pl.'s Am. Compl. ¶¶ 6, 10, D.E. # 18.) The vehicle was driven by David J. Steede Jr., Plaintiff's husband, and was traveling westbound on Highway 72 outside Corinth, Mississippi. (*Id.* ¶ 6.) Mr. Steede lost control of the vehicle, and it went off the roadway and rolled over before coming to a stop. (*Id.* ¶ 7.) During the rollover, the interior compartment of the vehicle buckled, and the roof crashed down on Plaintiff. (*Id.* ¶ 8.) Plaintiff suffered serious and permanent injuries, including a right and left broken pelvis, left broken ankle, left broken hip, left broken leg, and a severely injured right leg which ultimately had to be amputated above her knee. (*Id.* ¶ 9; Pl.'s Mem. Supp. Mot. to Compel Disc. 2.)

In the amended complaint, Plaintiff alleges defects in the Blazer's overall structure (including roof, doors, and supporting pillars), roof system, restraint system (seat belt), air bags, and lack of an electronic stability control system. (Pl.'s Am. Compl. ¶¶ 25-29, D.E. # 18.) However, from the parties' motion pleadings, it appears that Plaintiff has since abandoned her claims relating to the air bags and electronic stability control system, or at least those claims are no longer the focus of her defect allegations. (*See* Pl.'s Mem. Supp. Mot. to Compel Disc. 4; Def.'s Resp. in Opp'n to Pl.'s Mot. for Add'l Disc., D.E. # 65 at 2 & n. 6.)

Plaintiff's theory of the case now is that the defective structure, roof, and seat belt system in the Blazer collectively allowed excess slack to be introduced into seat belt system of the front

passenger's seat, the result of which was that Plaintiff's buckled seat belt failed to restrain her body during the rollover accident. Specifically, Plaintiff asserts that the front passenger seat belt retractor, or the torsion bar therein, failed to prevent the spooling of an unreasonable amount of seat belt webbing, and further, an additional amount of excessive webbing was introduced into the seat belt system when the roof buckled, causing the vehicle's B-Pillar, which housed the D-ring of Plaintiff's seat belt, to cave inboard. Plaintiff claims that as a result, she was "effectively unrestrained" and "ejected from and tethered to the SUV as it rolled over." (Pl.'s Mem. Supp. Mot. to Compel Disc. 2-3.) Plaintiff further asserts that the nature of her injuries are consistent with her position "that [she] contacted something other than the inside of the occupant compartment such as the asphalt and/or ground." (Pl.'s Reply to Def.'s Resp. in Opp'n 3.)

Discovery in this case is ongoing. The original scheduling order set April 9, 2012, as the deadline for fact discovery. (*See* Scheduling Order, D.E. # 13.) At the request of the parties, the Court has twice amended the scheduling order to extend fact discovery, with the most recent amended order setting a new fact discovery deadline of November 30, 2012. (*See* Order Amend. Rule 16(b) Scheduling Order, D.E. # 35; Order Amend. Rule 16(b) Scheduling Order, D.E. # 54.)[1] To date, Plaintiff has propounded upon GM seven sets of requests for production, three sets of interrogatories, and two sets of requests for admission. GM has provided numerous documents, photographs, videos, and other information in response to the requests[2] but has objected to

---

[1] Since the Magistrate Judge entered her November 2012 order setting out the procedural history of the case, the Court has granted another joint motion to amend the scheduling order (D.E. # 85).

[2] GM has provided with an itemized list of the responsive materials it claims to have already produced to Plaintiff. *See* Def.'s Resp. Opp'n to Pl.'s Mot. to Compel, ex. 1. Plaintiff herself acknowledges that GM has produced roughly 15,000 documents in response to her discovery requests. Pl.'s Mem. Supp. Mot. to Compel Disc. 4.

producing certain other information and materials on the grounds of privilege, lack of relevance, burden, and objectionable form of the question.

Plaintiff filed the instant motion asking the Court to compel GM to provide full responses to several of the discovery requests to which GM objected. Specifically, Plaintiff seeks complete responses to one interrogatory and ten requests for production. Plaintiff also seeks to compel GM to comply with Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure by producing a properly descriptive privilege log for information withheld on privilege grounds.

Much of the parties' discord in this discovery dispute concerns Plaintiff's entitlement to the design, components, testing, performance, reviews, and other information about GM vehicles other than the subject 2002 Chevrolet Blazer. The subject Blazer is a sport utility vehicle (SUV) in GM's "S/T" truck series. The S/T series is a line of mid-size light trucks, including both two-wheel drive ("S") and four-wheel drive ("T") pickup trucks and SUVs. GM contends that only vehicles that are "substantially similar" to the subject vehicle are properly discoverable in this case. (Def.'s Resp. Opp'n to Pl.'s Mot. to Compel 1.) As such, GM has lodged a blanket objection to Plaintiff's discovery requests concerning what GM views as "non-substantially similar" vehicles, including many vehicles within the same line and even some of the same model as the subject Blazer. The production lines and vehicle models at issue are detailed below.

A. GMT 330

The subject Blazer is part of the second generation of S/T two-door and four-door SUV's, identified within GM as the GMT 330 series. GM introduced this family of vehicles in 1995 and 1996 and initially marketed the vehicles as the Chevrolet Blazer, the GMC Jimmy, and the four-door Oldsmobile Bravada. Thereafter, GM added two other vehicle names to the GMT 330

family: the 1998 to 2001 model years of a version of the four-door GMC Jimmy were given the name "GMC Envoy"; the 1999 to 2001 model years of a version of the four-door Chevrolet Blazer were given the name "Chevrolet TrailBlazer." GM stopped production of the Oldsmobile Bravada and the GMC Jimmy (and Envoy) after the 2001 model year. The only remaining GMT 330 vehicle, the Chevrolet Blazer, continued in production through the 2005 model year.

GM has produced, or agreed to produce, information relating to substantially similar GMT 330 vehicles. With regard to the roof allegation, GM considers the following GMT 330 vehicles to be substantially similar to the subject vehicle: (1) 1995-2005 two-door Blazer; (2) 1995-2005 four-door Blazer; (3) 1995-2001 two-door Jimmy; (4) 1995-2001 four-door Jimmy; (5) 1996-2001 four-door Bravada; (6) 1998-2001 four-door Envoy; and (7) 1999-2001 four-door TrailBlazer. (Def.'s Resp. Opp'n to Pl.'s Mot. to Compel 8.) With regard to the seat belt allegation, however, GM contends that 1995-1997 GMT 330 vehicles are not substantially similar because they incorporated a different seat belt system from the one used in the subject vehicle and all other 1998-2005 GMT 330 vehicles. (*Id.*)

Plaintiff does not dispute that model years 1995-1997 of the GMT 330 contained a different seat belt system than later model years but argues that the earlier model years are "clearly relevant" because a different design implemented by GM into the same vehicle model speaks directly to the availability and feasibility of a safer alternative design. (Pl.'s Mem. Supp. Mot. to Compel Disc. 7-8.) According to GM, however, information regarding the seat belt design used in the 1995-1997 model years of the GMT 330 is not reasonably calculated to lead to the discovery

of evidence of a safer alternative design because the seat belts used during those years were actually recalled for safety reasons. (Def.'s Resp. Opp'n to Pl.'s Mot. to Compel 9.)[3]

B. GMT 325

The GMT 325 model vehicle is also a subject of this dispute. GMT 325 is the designation GM has given to the pickup trucks in its S/T line. GM objects to the production of information relating to the GMT 325 because these trucks are "different model vehicles" and are therefore not substantially similar to the subject Blazer SUV. (Def.'s Resp. Opp'n to Pl.'s Mot. to Compel 9.) The differences between the GMT 325 and the subject GMT 330, according to GM, include wheelbase, weight, engine/transmission, crash pulse, roof system, and seat belt system. (*Id.*) Furthermore, the GMT 325 and the GMT 330 "are crash tested separately." (*Id.*)

Plaintiff has presented two alternative arguments for the relevance of the GMT 325 vehicles. Plaintiff first argues that GMT 325 vehicles are sufficiently similar to the subject vehicle to potentially reveal evidence of a defect or unreasonably dangerous design in the subject Blazer. (Pl.'s Mem. Supp. Mot. to Compel Disc. 8-9.) Plaintiff argues that, according to documents already produced by GM, the GMT 330 and GMT 325 incorporated the same seat belt system in at least some model years. (*Id.* at 8.) Furthermore, Plaintiff contends that, notwithstanding the incorporation of a truck bed into the roofing structure of the GMT 325, it is

_____

[3] In her objections to the Magistrate Judge's order, Plaintiff argues that the Magistrate Judge "mistakenly stated that the 1995-1997 GMT 330 seat belt systems were recalled for safety reasons." Pl.'s Sealed Objs. to M.J.'s Order 14 n.13 (D.E. # 76). Plaintiff has cited evidence tending to show that only the 1997 GMT 330s were actually recalled. Pl.'s Reply in Supp. of Mot. to Compel, ex. B (D.E. # 68-2). However, the Magistrate Judge did not actually make a finding of fact on this point; her order merely recapitulated Defendant's assertion that the recall pertained to models from 1995 through 1997. More importantly, the Magistrate Judge's legal conclusions were not based in any way on the apparently erroneous premise that GMT 330 vehicles from model years 1995 to 1997 were subject to recall. Therefore, the issue has no bearing on the issues presented in this appeal.

substantially similar to the subject SUV for purposes of Plaintiff's roof claim because the performance of the front passenger occupant compartment portion of the Blazer's roof is all that is at issue, and, as to that portion of the roof, the GMT 325 and GMT 330 share the same component parts. (Pl.'s Reply to Def.'s Resp. in Opp'n 4.) Plaintiff alternatively argues that to the extent GMT 325 vehicles do contain substantially different parts or perform differently in rollovers, this dissimilarity supports the availability of an alternative design. (Pl.'s Mem. Supp. Mot. to Compel Disc. 8-10.)

C. GMT 360

The GMT 360 model was introduced in 2002 as the third generation of midsize SUVs in GM's S/T line. GM objects to Plaintiff's ability to discover matters relative to the GMT 360 because, according to GM, it is a non-substantially similar vehicle. (Def.'s Resp. Opp'n to Pl.'s Mot. to Compel 10.) Plaintiff does not dispute that the GMT 360 incorporated a different seat belt system and a different roof structure, but she argues that information regarding model years 2002 to 2005 of the GMT 360 is nonetheless discoverable because the design, testing, and performance of a mid-size SUV model that GM produced in the same class and during the same time period as the subject vehicle are relevant to the existence and feasibility of safer alternative designs. (Pl.'s Mem. Supp. Mot. to Compel Disc. 10.)

II. The Magistrate Judge's Order

The Magistrate Judge granted in part and denied in part Plaintiff's motion to compel. The Magistrate Judge primarily analyzed the "overarching issue of relevancy" of the information pertaining to GMT vehicles from lines other than the 330 series (as well as the vehicles from 1995 to 1997 in the GMT 330 series). Plaintiff's theory of the case is that the roof structure and seatbelt restraint system in the Blazer were defective and caused her injuries during the rollover. The

Magistrate Judge found, however, that Plaintiff had offered in support of this theory only a single photograph of a buckled seatbelt with "excessive webbing." The Magistrate Judge further found that other evidence in the record actually undermined Plaintiff's theory of liability. For example, Plaintiff's brief asserted that she was "ejected from and tethered to" the vehicle during the rollover. By contrast, Plaintiff testified in her deposition that after the vehicle came to rest, she was still in her seat in a sitting position with the seatbelt buckled. Based on Plaintiff's failure to offer any factual support for her theory, the Magistrate Judge specifically determined that Plaintiff was "engaging in nothing more than a fishing expedition to find something on which to rest her otherwise unsubstantiated theory of liability." (Order Granting in Part, Denying in Part Mot. to Compel 13-14, Nov. 2, 2012.)

The Magistrate Judge went on to reject each of Plaintiff's alternative arguments for the relevance of information about the GMT 325 vehicles, the GMT 360 vehicles, and the 1995 to 1997 models of GMT 330 vehicles. First, the Magistrate Judge held that Plaintiff was not entitled to discovery related to safer alternative designs because she had not made "a threshold showing that a defect in the subject Blazer front passenger seat belt system and roof system caused her injuries." (*Id.* at 17.) Without an expert opinion about the link between alleged defects in the vehicle and Plaintiff's injuries, evidence of any alternative design was irrelevant to the claims or defenses in this case. Second, the Magistrate Judge ruled that Plaintiff had failed to establish the relevance of information about the GMT 325, which Plaintiff alleged to be substantially similar to the subject Blazer. Plaintiff argued that the GMT 325 series shared common components and seatbelt designs with GMT 330 models like the Blazer. However, the Magistrate Judge held that without a basic showing that those shared elements were the cause of Plaintiff's injuries, Plaintiff had failed to show how any substantial similarities in the vehicles were relevant to the claims in

this case.  The Magistrate Judge held then that GM was "not required to produce information relative to the GMT 325, the GMT 360, or the seat belt system in the 1995-1997 model years of the GMT 330."  (*Id.* at 21.)

Based on her analysis of these threshold issues, the Magistrate Judge made specific rulings as to each issue presented in Plaintiff's motion to compel.  With respect to most discovery requests seeking information about model years 1998 to 2005 of the GMT 330 series, the Magistrate Judge granted Plaintiff's motion.  However, the Magistrate Judge denied all discovery requests related to the GMT 325 series, the GMT 360 series, and model years 1995 to 1997 of the GMT 330 series.  The Magistrate Judge also granted Plaintiff's request that GM produce a privilege log.  Plaintiff's timely-filed objections followed.

### III.  Plaintiff's Objections to the Magistrate Judge's Order

In her appeal of the Magistrate Judge's order, Plaintiff does not object to all of the specific rulings of the Magistrate Judge as to Plaintiff's particular discovery requests.  Rather, Plaintiff argues that the Magistrate Judge erred generally by denying Plaintiff's discovery requests regarding the GMT 325 series, the GMT 360 series, and model years 1995 to 1997 of the GMT 330 series.  Plaintiff contends that the Magistrate Judge incorrectly held Plaintiff to a higher burden to establish the relevance of this discovery insofar as it constituted possible evidence of alternative feasible designs and/or substantially similar products.  Specifically, Plaintiff claims that she has demonstrated the substantial similarity of the seatbelt systems found in the GMT 325 series with the seatbelts used in the 2002 Blazer in which Plaintiff was injured.[4]  Plaintiff also argues that she has shown the substantial similarity of the GMT 325 roof system to the GMT 330 roof system. According to Plaintiff, the Magistrate Judge failed to credit this evidence and undertake "a

---

[4] Pl.'s Sealed Objs.to M.J.'s Order 7-8.

fact-specific analysis" to determine the possible similarity of the models at issue.   Plaintiff admits that the seatbelt restraints used in the model year 1995 to 1997 GMT 330 series and the GMT 360 series are different from the system with which her Blazer was equipped.   To the extent that any such vehicle is not substantially similar to the 2002 Blazer, Plaintiff argues that these vehicles provide evidence of safer alternative designs.   Therefore, it was contrary to law for the Magistrate Judge to deny Plaintiff's motion seeking discovery of this relevant information.

Defendant has filed a response in opposition to Plaintiff's objections.   According to Defendant, the Magistrate Judge correctly held that the GMT 325, GMT 360, and the 1995 to 1997 models of the GMT 330 vehicles were not substantially similar to the subject Blazer.   Defendant emphasizes that based on the significant amount of information GM has already produced, Plaintiff has "more than enough discovery about substantially similar vehicles" to make out her case.   The Court notes that Defendant does not address Plaintiff's argument that information about vehicles, which are not substantially similar, is relevant to prove the feasibility of safer, alternative designs.

In her reply Plaintiff contends that although the Magistrate Judge thoroughly reviewed the vehicles and systems at issue, her ruling was not based on a factual analysis of the similarities (or lack thereof) among the different GM lines.   Plaintiff asserts that the Magistrate Judge's decision was based on her determination that Plaintiff had not first proven that a defect existed in her own GM vehicle or how such a defect caused her injuries.   Plaintiff argues that it is contrary to law for the Magistrate Judge to hold Plaintiff to this burden.   Plaintiff's reply states that "Plaintiff is not required to put forth proof of defect and causation sufficient to defeat a motion for summary judgment or prevail at trial in order to discover information overwhelmingly relevant to her claims

and theory of defect and causation."[5] Therefore, the essence of Plaintiff's appeal goes to the standard to which the Magistrate Judge held Plaintiff, and not a particular conclusion about the substantial similarity of the vehicles at issue or whether certain models might be relevant as evidence of safer alternative designs.

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 636(b), a district court shall apply a "clearly erroneous or contrary to law" standard of review for "nondispositive" preliminary matters such as motions to compel.[6] Fed. R. Civ. P. 72(a) states that a district judge "shall consider" objections to a magistrate judge's order on a nondispositive matter and "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."[7] "The clearly erroneous standard applies only to factual findings made by the Magistrate Judge, while legal conclusions will be reviewed under the more lenient contrary to law standard."[8] Under the clearly erroneous standard for findings of fact, the Court need only consider whether any evidence or showing exists to support the Magistrate Judge's finding and whether the finding was reasonable.[9] "When examining legal conclusions under the contrary to law standard, the Court may overturn any

---

[5] Pl.'s Reply to Def.'s Resp. to Pl.'s Sealed Objs. 3 (D.E. # 86).

[6] *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) (citing *United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). *See also* 28 U.S.C. § 636(b)(1)(A).

[7] Fed. R. Civ. P. 72(a); *Bell v. Int'l Bhd. of Teamsters*, no. 96-3219, 1997 WL 103320, *4 (6th Cir. 1997).

[8] *E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 605 (W.D. Tenn. 2009) (quotation omitted).

[9] *Tri-Star Airlines, Inc. v. Willis Careen Corp. of Los Angeles*, 75 F. Supp. 2d 835, 839 (W.D. Tenn. 1999) (citations omitted).

conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent."[10]

## ANALYSIS

In this appeal Plaintiff objects to the Magistrate Judge's conclusion that Plaintiff was not entitled to discovery as to certain GM vehicles, either on the grounds that the vehicles included safer, alternative designs or that they were substantially similar to Plaintiff's 2002 Chevrolet Blazer. However, the Magistrate Judge did not base all of her holdings on this relevance analysis and denied other discovery requests on separate grounds. Plaintiff has not appealed any of those rulings. Specifically, the Court finds that Plaintiff has not raised any objection to the Magistrate Judge's denial of the following discovery requests:

· Interrogatory no. 11, seeking copies of answers filed in response to complaints against GM alleging defects in the roof system or side airbag system. The Magistrate Judge concluded that this information was available through other sources and therefore denied the motion to compel.

· Requests for Production nos. 17 & 18, seeking computer-simulated tests on the roof of the subject Blazer. The Magistrate Judge denied the motion because GM has already produced the tests it has in its possession.

· Request for Production no. 24, seeking depositions of GM witnesses who have testified in any civil action alleging a defect in the roof or seat belt system of a GMT 330 or 325 vehicle.

---

[10] *Doe v. Aramark Educ. Res., Inc.*, 206 F.R.D. 459, 461 (M.D. Tenn. 2002) (citing *Gandee v. Glaser,* 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd,* 19 F.3d 1432 (6th Cir. 1994) (internal quotation marks omitted)). *See also* 32 Am. Jur. 2d *Federal Courts* § 143 (2008) ("A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure").

The Magistrate Judge denied the motion on the grounds that Plaintiff had not shown that the vehicles were substantially similar or in the alternative because the information was available from other sources.

· Request for Production no. 28, seeking photographs of accidents involving ejections of front seat occupants in GMT 330 and 325 vehicles. The Magistrate Judge concluded that Plaintiff had not shown that ejection from the vehicle was at issue in the case at bar and thus the evidence Plaintiff sought was not relevant.

For each of these discovery requests, the Magistrate Judge denied the motion to compel on some grounds other than the substantially similarity issue or the alternative design issue. Therefore, in the absence of some assignment of error in these conclusions, the Court need not consider the Magistrate Judge's rulings on these discovery requests.

As for the objections Plaintiff has raised, the Court holds that the Magistrate Judge's order was not clearly erroneous or contrary to law. The Magistrate Judge correctly stated the general principles governing discovery disputes, particularly Plaintiff's burden as the party seeking discovery to show how the information is relevant to her case. Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."[11] Once a party raises an objection to discovery based on relevance, "the burden shifts to the party seeking the information to demonstrate that the requests are relevant to the subject matter involved in the pending action."[12] "A district court

_____

[11] Fed. R. Civ. P. 26(b)(1).

[12] *Allen v. Howmedica Leibinger.* 190 F.R.D. 518, 522 (W.D. Tenn. 1999). In her objections Plaintiff argues that *Allen* is factually distinguishable from the case at bar, and as such the Magistrate Judge should have not relied on *Allen.* Pl.'s Sealed Objs. to M.J.'s Order 11. The Court finds that the Magistrate Judge cited *Allen* exactly twice and only for rules that apply

does not abuse its discretion in denying discovery when the discovery requested would be irrelevant to the underlying issue to be decided."[13]   A district court should not, however, deny the discovery of "arguably relevant information solely because" the evidence is merely "speculative."[14]

Even so, it is well-established that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery."[15]   Generally, district courts enjoy discretion to employ reasonable limits on the discovery of relevant information to prevent a fishing expedition.[16]   The Sixth Circuit has held that "[a]lthough a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive."[17]

It is undisputed in this case that Plaintiff bears the burden to show that the information she

---

generally to any discovery dispute.   *See* Order Granting in Part, Denying in Part Mot. to Compel 10, 11.   Therefore, it was not contrary to law for the Magistrate Judge to cite *Allen* in support of her analysis.

[13] *Bd. of Educ. of Shelby Cnty., Tenn. v. Memphis City Bd. of Educ.*, no. 11-2101, 2012 WL 5817945 (W.D. Tenn. Nov. 15, 2012) (quoting *Sigmon v. Appalachian Coal Props.,* 400 F. App'x 43, 50 (6th Cir. 2010) (other citation omitted).

[14] *Coleman v. Am. Red Cross,* 23 F.3d 1091, 1097 (6th Cir. 1994).

[15] *Piacenti v. Gen. Motors Corp.*, 173 F.R.D. 221, 224 (N.D. Ill. 1997) (quoting *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir. 1992).

[16] *Serrano v. Cintas Corp.*, 699 F.3d 884, 902 (6th Cir. 2012) (citing *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)).

[17] *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting *Marshall v. Westinghouse Elec. Corp.,* 576 F.2d 588, 592 (5th Cir. 1978) (internal quotation marks omitted)).

seeks is relevant to her claims. The Magistrate Judge held that Plaintiff had not demonstrated that any seatbelt or roof defect existed in her own vehicle or shown how any such defect had caused or exacerbated her injuries. As such, Plaintiff had not shown how any similar defect or safer alternative in other GM vehicles was relevant in this case. Plaintiff maintains that she is entitled to the information about other GM vehicles under the broad standard for discovery provided by the Federal Rules of Civil Procedure. According to Plaintiff, the Magistrate Judge held her to a higher standard by "forc[ing her] to put on proof sufficient to defeat a motion for summary judgment standard (such as an expert affidavit)."[18] The issue presented in this appeal then is what Plaintiff needed to show in order to satisfy her burden and establish that the additional evidence she seeks about other GM vehicles is relevant to her claims concerning the 2002 Chevrolet Blazer. As previously discussed, Plaintiff offers two arguments for the relevance of this discovery: the substantial similarity between the Blazer and other GM vehicles and the feasibility of safer, alternative designs. The Court will consider each argument in turn.

## I. Substantially Similar Vehicles

Plaintiff argues that some of the information she seeks is relevant because the other GM vehicles included component parts or systems which were substantially similar to the seatbelt restraints and roof of her 2002 Blazer. Plaintiff has articulated her theory of defect in the Blazer's seatbelt as follows:

> [Plaintiff's seat belt claim] revolves around the unreasonably large amount of webbing that was introduced into the seat belt system (at least 10 inches of additional webbing came off of the retractor) during the subject rollover crash due to a failure of the subject retractor. The retractor is the mechanism that the webbing is connected to, that allows the webbing to extend and retract, and that is supposed to "lock" the webbing in a crash. The subject retractor includes a torsion

---

[18] Pl.'s Sealed Objs. to M.J.'s Order 12.

bar, which is a "load limiter" component inside the retractor used to reduce the load of an occupant into the webbing during a crash. A torsion bar will allow webbing to continue to be extracted off the retractor (supposedly in a "controlled" manner) when a certain amount of force is applied – even after the alleged "locking" of the retractor.[19]

Plaintiff contends that some models in the GMT 325 series (though Plaintiff does not specify which model years) utilized the same seatbelt system as the 2002 Chevrolet Blazer. Thus, Plaintiff asserts that evidence relating to the performance of the seatbelts in these GMT 325 vehicles is relevant to Plaintiff's claims about the performance of the seatbelt system in the 2002 Blazer. As for the defect alleged in the roof system, Plaintiff claims that "inboard movement of the B-Pillar – due to the crushing of the roof system – which displaced the D-Ring (which is affixed to the B-Pillar above the shoulder) inboard and effectively introduced an additional 8 to 10 inches of slack into the seat belt system (in addition to the 10 inches or more of excess webbing from the retractor)."[20] Plaintiff argues that certain GMT 325 vehicles shared common component parts in their roof systems with the roof system of the 2002 Blazer. Thus, evidence concerning the roof system (and the components thereof) in certain GMT 325 vehicles is relevant to her claims about defects in the roof of the 2002 Blazer.

In the products liability context, "discovery of similar, if not identical, models" is generally permitted.[21] On the other hand, allowing "discovery of models that are not substantially similar is

---

[19] Pl.'s Reply in Supp. of Mot. to Compel, 1-2 (D.E. # 68). The only evidence Plaintiff has introduced in support of her theory of defect in the 2002 GMT 330 vehicles is proof of a recall of 1997 GMT vehicles, a line which Plaintiff admits had a different seatbelt system.

[20] *Id.* at 2.

[21] *Hofer*, 981 F.2d at 380–81. *See also Tolstih v. L.G. Electronics, USA, Inc.*, CIV.A. 2:07-CV-582, 2009 WL 439564, *5 (S.D. Ohio Feb. 20, 2009); *Hicks v. CNH America, LLC,* No. 3:04CV–366–H, 2005 U.S. Dist. LEXIS 31184, at *3–4 (W.D.Ky. Dec. 1, 2005) (prohibiting discovery concerning product model that "does not appear to share pertinent characteristics" with

truly the equivalent of comparing apples and oranges where there are differences between the other models and the model at issue."[22]  To avoid such a result, courts make a fact-specific inquiry to determine the extent of the similarities or dissimilarities between models.[23] Conclusory generalities, however, are insufficient to establish "substantial similarity."[24]

Although it has not addressed the precise issue presented, the Sixth Circuit has recognized the substantial similarity doctrine and held, for example, that evidence of prior accidents is admissible to prove a defect so long as the prior accidents involved the same model, design, and defect, and occurred under similar circumstances.[25] The Sixth Circuit has further held that "[t]he substantial similarity rule does not require identical products; nor does it require us to compare the products in their entireties.  The rule requires substantial similarity among the variables relevant

---

the subject model and therefore not reasonably calculated to lead to the discovery of admissible evidence); *Fine v. Facet Aerospace Prods. Co.,* 133 F.R.D. 439, 441 (S.D.N.Y. 1990) ("Generally, different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation.").

[22] *Piacenti*, 173 F.R.D. at 225.

[23] *Hofer*, 981 F.2d at 381. *See also Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116, 1120 (N.D. Ga. 2007) (stating that models must share "pertinent characteristics" and holding that courts must undertake a fact-specific inquiry to determine similarities and dissimilarities).

[24] *Gibson*, 510 F. Supp. 2d at 1121.

[25] *See, e.g., Anderson v. Whittaker Corp.*, 894 F.2d 804, 813 (6th Cir. 1990). *See also Croskey v. BMW of North Am., Inc.*, 532 F.3d 511, 518 (6th Cir. 2008) ("Substantial similarity means that the accidents must have occurred under similar circumstances or share the same cause."); *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 297 (6th Cir. 2007) (same); *Rye v. Black & Decker Mfg. Co.*, 889 F.2d 100, 102 (6th Cir. 1989) (same).  The substantial similarity of two products or incidents might be relevant to a number of issues in a products liability action.  For example, evidence of other incidents involving substantially similar products could be relevant to the issue of whether a defendant had notice of a potentially dangerous condition. *Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373, 376 (6th Cir. 1983) (other citations omitted).

to the plaintiff's theory of defect."[26]  The plaintiff has the burden to establish the substantial

similarity of two comparators,[27] and the court's task is to undertake a fact-specific analysis to

determine whether the two are substantially similar.[28]  In short, there is Sixth Circuit precedent

for a series of core concepts related to the substantial similarity doctrine, namely, that evidence of

substantially similar accidents or products is relevant, that the plaintiff bears the burden to prove

the substantial similarity of two things, and that the Court must make a fact-bound determination

of whether the two are indeed substantially similar.

In light of the Sixth Circuit's approach to the substantial similarity rule as well as relevant

authority from other jurisdictions, the Court holds that the Magistrate Judge's ruling on the

discovery of substantially similar GM vehicles was not contrary to law and that the Magistrate

Judge's approach was well-supported.  Other than general statements contained in her legal

briefs, Plaintiff offered no evidentiary support to show that the defects alleged actually existed in

her 2002 Blazer.  Furthermore, the Magistrate Judge rightly emphasized Plaintiff's failure to

establish a causal connection between any alleged defect in her 2002 Blazer and the injuries she

sustained in the rollover crash.  Without the threshold showings of defect and causation, the

Magistrate Judge need not have engaged in a detailed factual determination of whether the seatbelt

---

[26] *Clark v. Chrysler Corp.*, 310 F.3d 461, 473 (6th Cir. 2002) *judgment vacated on other grounds,* 540 U.S. 801 (2003) (quoting *Smith v. Ingersoll–Rand Co.,* 214 F.3d 1235, 1248 (10th Cir. 2000)).

[27] *Croskey*, 532 F.3d at 518 (citing *Lewy v. Remington Arms Co.,* 836 F.2d 1104, 1109 (8th Cir. 1988)).

[28] *E.g. Brock v. Caterpillar, Inc.,* 94 F.3d 220, 225 (6th Cir. 1996) (determining that models of bulldozers were not substantially similar based on differences in their brake boosting systems) ("There were a large number of changes in character, size, style, and technological advancement between the manufacture design of the D9H in the early 1970's and that of the D10 some years later.").

restraints in the GMT 325 series were substantially similar to the seatbelt system in the subject Blazer. Therefore, it was not contrary to law for the Magistrate Judge to deny Plaintiff's motion as to the GMT 325 seatbelt and roof systems.

Even if the Magistrate Judge should have continued on and determined whether the 2002 Blazer's seatbelt and roof was substantially similar to those in the GMT 325 line (as Plaintiff argues on appeal), the Court holds that Plaintiff still failed to carry her burden to obtain the information. Aside from several assertions in her legal brief, Plaintiff did not make a fact-specific showing to demonstrate how the 2002 Blazer's seatbelt system was substantially similar to the seatbelt system used in some GMT 325 vehicles. Plaintiff provided extensive briefing in support of her motion to compel but never directed the Magistrate Judge to specific record evidence from which she might conclude that the 2002 Blazer's seatbelt system was substantially similar to the seatbelts used in the GMT 325 line. Rather Plaintiff simply provided the Magistrate Judge with an exhibit totaling 278 pages, which purported to show how the GMT 330 and 325 lines were substantially similar.[29] Plaintiff cited the exhibit only one time in her opening brief where she stated in conclusory fashion that "[a] review of the Performance Assessment Committee (PAC) Reports produced by GM (attached as Exhibit K) reveals that for many years the GMT 330 and GMT 325 incorporated the same seat belt system (particularly the retractor and its component parts)."[30] Other than this single, passing reference to the exhibit, Plaintiff never discussed the actual evidence for substantial similarity or pinpointed for the Magistrate Judge the relevant

---

[29] Pl.'s Mot. to Compel, Ex. K (D.E. # 61-11).

[30] Pl.'s Mem. in Support of Mot. to Compel 8 (D.E. # 61).

information contained in this large filing.[31]   It appears to the Court then that Plaintiff submitted the exhibit to the Magistrate Judge with the expectation that the Magistrate Judge would carefully review all 278 pages to determine whether they contained any support for Plaintiff's claim of substantial similarity.   This procedure would essentially relieve Plaintiff of her burden to demonstrate how the two products were substantially similar and improperly shift the burden to the Court.   It was not contrary to law for the Magistrate Judge to decline this invitation.

Even if the Magistrate Judge had combed the record searching for the relevant information (and the Court holds it was not contrary to law for her to refuse to do so), Plaintiff provided no other analysis (expert or otherwise) of the technical exhibits to establish the substantial similarity of her 2002 Blazer with some GMT 325 vehicles.   Bald assertions without citation to specific evidence and detailed analysis demonstrating substantial similarity do not suffice.[32]   The Court concludes then that Plaintiff failed to meet her burden to show specifically how the GMT 330 and

---

[31] Additionally, Plaintiff refers to the exhibit only once in her objections to the Magistrate Judge's order as support for the following contention: "In some years, the GMT 330 and GMT 325 had the same driver-side seat belt system, but a different passenger-side seat belt system (without a torsion bar load limiting component application in the retractor of the GMT 325)."   *See* Pl.'s Sealed Objs. to M.J.'s Order 3 & n.4.   Even here Plaintiff mentions Exhibit K only in a footnote, though with citation to approximately nine specific pages of the 278-page exhibit.   Likewise, Plaintiff's objections contain only conclusory assertions such as "Plaintiff has put forth overwhelming evidence as to the similarities of the GMT 325 seat belt system and roof system . . . ."   *Id.* at 11.

[32] Plaintiff has cited for support an unreported products liability case from another district court in this Circuit, *Brownlow v. Gen. Motors Corp.*, no. 3:05CV-414-R, 2007 WL 2172925 (W.D. Ky. Sept. 13, 2007).   Plaintiff argues that this case "reflects discovery principles consistent with the Sixth Circuit, which control this discovery dispute."   Pl.'s Sealed Objs. to M.J.'s Order 7. However, the Court finds *Brownlow* to be distinguishable.   Unlike Plaintiff in the case at bar, the plaintiff in *Brownlow* produced a consumer publication, showing that certain GM van models were substantially similar.   Although Plaintiff in the case at bar has provided a 278-page exhibit to the Court, Plaintiff has not cited to the evidence to show how it supports her claims about the substantial similarity of the GMT 330 series and the GMT 325 line.   As such, *Brownlow* is not persuasive.

GMT 325 vehicles were substantially similar in relevant respects. As such the Magistrate Judge had no duty to undertake "a fact specific determination of the extent of the similarities and dissimilarities" of the seatbelts and roof components used in the two vehicle lines.[33] Therefore, the Magistrate Judge's decision to deny the motion to compel production of information regarding GMT 325 vehicles on the basis of substantial similarity was not contrary to law.[34]

## II.   Feasible Alternative Designs

Plaintiff next argues that the Magistrate Judge erred in denying her discovery requests for information on the GMT 325 vehicles, the GMT 360 vehicles, and the 1995 to 1997 models of GMT 330 vehicles. While Plaintiff concedes that the seatbelt systems used in these particular models were not substantially similar to the seatbelt in her 2002 Blazer, Plaintiff argues that

---

[33] Pl.'s Sealed Objs. to M.J.'s Order 10 (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 381 (8th Cir. 1992)).

[34] Defendant makes a separate argument about whether Plaintiff is entitled to discovery concerning substantially similar GM vehicles. Defendant cites a previous order where the Magistrate Judge denied Plaintiff's discovery requests for rollover information about non-GMT 330 vehicles. In her April 2012 order, the Magistrate Judge stated without elaboration that "GM has no burden to provide rollover information for vehicles that are not substantially similar to the vehicle at issue in this case." Order Denying Pl.'s Mot. to Compel 10, Apr. 3, 2012 (D.E. # 43). According to Defendant, Plaintiff is now simply attempting to circumvent this prior ruling.

It is true that "[u]nder the law-of-the-case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation." *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002) (citations omitted). Additionally, the doctrine precludes a party from "challenging a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but w[as] not." *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 493 (6th Cir. 2011) (quoting *United States v. Adesida,* 129 F.3d 846, 850 (6th Cir. 1997)). Here the Court finds that Plaintiff's appeal of the April 2012 order did not squarely challenge the Magistrate Judge's conclusion that the non-GMT 330 vehicles were not substantially similar. Arguably then Plaintiff should be precluded from raising the issue of substantial similarity further. However, because the Court finds other grounds for affirming the Magistrate Judge's November 2012 order, it need not reach this alternative argument for overruling Plaintiff's objections.

evidence concerning these other GM vehicles is relevant to prove that safer, alternative feasible designs existed.

The Magistrate Judge correctly set out the general principles of Tennessee products liability law, and Plaintiff does not object to this statement of the law on appeal. To establish a prima facie claim for products liability in Tennessee, the plaintiff must show (1) that the product was defective and/or unreasonably dangerous; (2) that the defect existed at the time the product left the manufacturer's control; and (3) that the plaintiff's injury was proximately caused by the defective product.[35] Among the factors to be considered in determining whether a product was in a defective condition or unreasonably dangerous are "the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market, rather than at the time of injury [; and] . . . customary designs, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products."[36] The Tennessee Court of Appeals has held that "evidence of a technologically feasible and practical alternative design that likely would have reduced or prevented plaintiff's harm will always be highly relevant and probative of the issue of whether a product was defective or unreasonably dangerous."[37] Still, proof of a safer alternative design is not required to establish defect or unreasonable dangerousness.[38]

For the reasons already discussed, the Court holds that the Magistrate Judge's ruling on this

---

[35] *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483-84 (6th Cir. 2008).

[36] Tenn. Code Ann. § 29-28-105(b).

[37] **Error! Main Document Only.***Potter v. Ford Motor Co.*, 213 S.W.3d 264, 269 (Tenn. Ct. App. 2006)

[38] *Id.*

issue was not contrary to law.  Just as the Magistrate Judge did not err by denying Plaintiff's discovery request for information about certain GM vehicles based on substantial similarity, the Magistrate Judge properly denied Plaintiff's request for information about alternative designs. The Magistrate Judge concluded that Plaintiff had failed to make a threshold showing of relevance. Specifically, Plaintiff had not established that her 2002 Blazer was itself defective in any way or that a defect in the vehicle caused her injuries.  The Magistrate Judge reasoned that "[u]ntil there is at least some plausible causal connection between the design and the harm, it is neither necessary nor tenable to surmise that an alternative design would have 'reduced or prevented plaintiff's harm.'"[39] Plaintiff argues that the Magistrate Judge's order "has put Plaintiff in an untenable position by requiring her to prove defect and causation in order to gather relevant evidence to prove defect and causation."[40]   The Court disagrees.   Far from requiring Plaintiff to prove her claim on the merits, the Magistrate Judge has simply required that Plaintiff make some showing to substantiate her claim that her own 2002 Blazer actually had a defective seatbelt system or that its defect caused her injuries.   Plaintiff has not demonstrated why she needs information about other vehicles from other GM lines to make this straightforward, preliminary showing about the subject Blazer.   Based on the authority cited by the Magistrate Judge, the Court concludes that her ruling was not contrary to law.

In the alternative, the Court holds that Plaintiff has failed to show how this evidence is relevant insofar as Plaintiff offered only generalized claims about the different seatbelt systems used in other GM vehicles.   Plaintiff has asserted that certain GM vehicles, including GMT 330

---

[39] Order Granting in Part and Denying in Part Pl.'s Mot. to Compel 17.

[40] Pl.'s Sealed Objs. to M.J.'s Order 14.

vehicles made between 1995 and 1997, unspecified GMT 325 vehicles, and GMT 360 vehicles made between 2002 and 2005, utilized seatbelt systems different from the one used in the 2002 Blazer. However, Plaintiff has not shown that these systems would have potentially "reduced or prevented plaintiff's harm," an essential element to establishing that these other seatbelts might be "evidence of a technologically feasible and practical alternative design." As the Magistrate Judge correctly observed in her order, "[a] party seeking to discover information bearing on another product design must make a 'threshold showing' of relevance by showing not only that the design is a feasible alternative, but also that it is potentially safer than the subject design."[41] Plaintiff has made no such showing here and concedes in her objections that questions remain, for example, about whether "seat belt systems [used in some GMT 325 vehicles are] safer without torsion bars [like the one in the 2002 Blazer]."[42] The Court concludes on this alternative basis then that the Magistrate Judge's order was not contrary to law.

## CONCLUSION

Having reviewed the Magistrate Judge's order, the parties' briefing on appeal, and the entire record of the proceedings, the Court holds that the Magistrate Judge's ruling was not clearly erroneous or contrary to law. Therefore, the decision of the Magistrate Judge is **AFFIRMED**.

Plaintiff requests that in the event the Court affirms the Magistrate Judge's order, the Court

---

[41] Order Granting in Part, Denying in Part Pl.'s Mot. to Compel 14 (citing *Fine v. Facet Aerospace Prods. Co.*, 133 F.R.D 439, 443 (S.D.N.Y. 1990) ("In order for the requested discovery to be relevant, then, it must be demonstrated that the designs are truly alternatives and that they are potentially safer. Of course, the party seeking discovery need not prove its case on the merits in order to obtain disclosure. It must, however, make *some threshold showing* of relevance before the opposing party is obligated to open to discovery a variety of designs not directly at issue in the litigation.") (emphasis added).

[42] Pl.'s Sealed Objs. to M.J.'s Order 16.

allow Plaintiff to appeal the discovery issues to the Sixth Circuit. Plaintiff's request is denied for failure to show why an interlocutory appeal of these orders would be proper under 28 U.S.C. § 1292.

      **IT IS SO ORDERED.**

                                        **s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: January 11, 2013.